Justice Ginsburg
delivered the opinion of the Court.
We address in this case a procedural issue arising in a civil rights action brought under 42 U. S. C. § 1983 by Michelle Ortiz, a former inmate at the Ohio Reformatory for Women. Plaintiff below, petitioner here, Ortiz filed a complaint in federal court stating key facts on which she based claims for damages against superintending prison officers. On two consecutive nights during her one-year incarceration, Ortiz stated, she was sexually assaulted by a corrections officer. Although she promptly reported the first incident, she fur *183 ther alleged, prison authorities took no measures to protect her against the second assault. After that assault, Ortiz charged, and in retaliation for accounts she gave of the two episodes, prison officials placed her, shackled and handcuffed, in solitary confinement in a Cell without adequate heat, clothing, bedding, or blankets. The treatment to which she was exposed, Ortiz claimed, violated her right, safeguarded by the Eighth and Fourteenth Amendments, to reasonable protection from violence while in custody.
Principal defendants in the suit, Paula Jordan, a case manager at Ortiz’s living unit, and Rebecca Bright, a prison investigator, moved for summary judgment on their pleas of “qualified immunity,” a defense that shields officials from suit if their conduct “d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U. S. 800, 818 (1982). Finding that the qualified immunity defense turned on material facts genuinely in dispute, see Fed. Rule Civ. Proc. 56(a), the District Judge denied summary judgment. Ortiz v. Voinovich, 211 F. Supp. 2d 917, 923-930 (SD Ohio 2002).
The case then proceeded to trial, and the jury returned verdicts for Ortiz against both Jordan and Bright. The two officers appealed to the United States Court of Appeals for the Sixth Circuit, targeting, inter alia, the denial of their pretrial motion for summary judgment. “[C]ourts normally do not review the denial of a summary judgment motion after a trial on the merits,” the Court of Appeals recognized. 316 Fed. Appx. 449, 453 (2009). Nevertheless, the court continued, “denial of summary judgment based on qualified immunity is an exception to this rule.” Ibid. Reversing the judgment entered on the jury’s verdict, the appeals court held that both defendants were sheltered from Ortiz’s suit by qualified immunity.
We granted review, 559 U. S. 1092 (2010), to decide a threshold question on which the Circuits are split: May a party, as *184 the Sixth Circuit believed, appeal an order denying summary judgment after a full trial on the merits?[1] Our answer is no. The order retains its interlocutory character as simply a step along the route to final judgment. See Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541, 546 (1949). Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion. A qualified immunity defense, of course, does not vanish when a district court declines to rule on the plea summarily. The plea remains available to the defending officials at trial; but at that stage, the defense must be evaluated in light of the character and quality of the evidence received in court.
When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication. “[O]nce trial has been had,” however, “the availability of official immunity should be determined by the trial record, not the pleadings nor the summary judgment record.” 15A C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure §3914.10, p. 684 (2d ed. 1992 and Supp. 2010). After trial, if defendants continue to urge qualified immunity, the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense. See Fed. Rule Civ. Proc. 50(a), (b) (stating conditions on which judgment may be granted as a matter of law).
In the case before us, the Court of Appeals, although purporting to review the District Court’s denial of the prison *185 officials’ pretrial summary-judgment motion, 316 Fed. Appx., at 453, several times pointed to evidence presented only at the trial stage of the proceedings, see id., at 453-454. The appeals court erred, but not fatally, by incorrectly placing its ruling under a summary-judgment headline. Its judgment was infirm, however, because Jordan’s and Bright’s failure to renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) left the appellate forum with no warrant to reject the appraisal of the evidence by “the judge who saw and heard the witnesses and ha[d] the feel of the case which no appellate printed transcript can impart.” Cone v. West Virginia Pulp & Paper Co., 330 U. S. 212, 216 (1947).
I
Michelle Ortiz, serving a sentence for aggravated assault against her husband,[2] maintained that she was sexually assaulted on consecutive days by Corrections Officer Douglas Schultz. On Friday, November 8, 1996, Ortiz recounted, Schultz walked up behind her in the washroom of her living quarters and grabbed one of her breasts.[3] Ortiz fended off the assault, but Schultz returned later that day and threatened to “see [her] tomorrow,” Tr. 36.
The next day, Ortiz described the incident to Jordan. After assuring Ortiz that “no one has the right to touch you,” 316 Fed. Appx., at 451 (internal quotation marks omitted), Jordan told Ortiz that Schultz had been reassigned to another correctional facility and was serving his last day at the reformatory. Ortiz could file a written complaint, Jordan noted. She suggested, however, that Ortiz not do so, in view of Schultz’s imminent departure. Jordan advised Ortiz that she “always ha[d] the right to defend [her]self,” Tr. 43, *186 and counseled her to “ ‘hang out with [her] friends’ for the rest of the day so that Schultz would not have the chance to be alone with her,” 316 Fed. Appx., at 451 (alteration in original).
The day of her conversation with Ortiz, Jordan wrote an incident report describing her version of the encounter. In that account, Jordan stated that Ortiz had refused to name her assailant or provide any other information about the assault. Jordan did not immediately notify her superiors of the assault Ortiz reported and Ortiz’s consequent fears about her safety. Taking the incident report home in her workbag, Jordan submitted it upon her return to work two days later.
Ortiz endeavored to follow Jordan’s advice about staying in the company of friends. But later in the day, feeling ill, she returned to her room and fell asleep. Three other inmates were in the room when Ortiz went to sleep. They were gone when she awoke to find Schultz standing over her, one hand fondling her left breast, the fingers of the other hand inside her underwear penetrating her vagina.
Bright’s investigation began two days after the second assault. During its course, Bright placed Ortiz in solitary confinement. Ortiz maintained that Bright isolated her in retaliation for her accusations against Schultz. Bright, however, testified that she segregated Ortiz because Ortiz continued to discuss the investigation with other inmates, disobeying Bright’s repeated instructions to refrain from speaking about it.
In her § 1983 action, Ortiz claimed that Jordan did nothing to ward off Schultz’s second sexual assault, despite Jordan’s awareness of the substantial risk of that occurrence. Bright, Ortiz charged, retaliated against her because she resisted Bright’s efforts to induce her to retract her accounts of Schultz’s assaults. (Schultz, having resigned from state employment, could not be found and served with process.) The District Court, noting multiple factual disputes material to Ortiz’s claims and the officers’ defense of qualified immu *187 nity, denied summary judgment to Jordan and Bright, 211 F. Supp. 2d, at 923-930;[4] neither defendant appealed the District Court’s denial of summary judgment.
The case proceeded to trial, and a jury returned a verdict of $350,000 in compensatory and punitive damages against Jordan and $275,000 against Bright. Jordan and Bright sought judgment as a matter of law, pursuant to Rule 50(a), both at the close of Ortiz’s evidence and at the close of their own presentation. But they did not contest the jury’s liability finding by renewing, under Rule 50(b), their request for judgment as a matter of law. Nor did they request a new trial under Rule 59(a). The District Court entered judgment for Ortiz in accordance with the jury’s verdict.
On appeal, Jordan and Bright urged both that the District Court should have granted them summary judgment on their defense of qualified immunity and that the verdict was “against the weight of the evidence.” Final Brief for Defendants-Appellants in No. 06-3627 (CA6), pp. 21, 26. Appraising the parties’ evidence under a de novo standard of review, the Court of Appeals “reverse[d] the denial of qualified immunity to both Bright and Jordan.” 316 Fed. Appx., at 455.[5]
We granted certiorari to resolve the conflict among the Circuits as to whether a party may appeal a denial of sum *188 mary judgment after a district court has conducted a full trial on the merits. See n. 1, supra.
II
The jurisdiction of a Court of Appeals under 28 U. S. C. § 1291 extends only to “appeals from ... Anal decisions of the district courts.” Ordinarily, orders denying summary judgment do not qualify as “final decisions” subject to appeal. Summary judgment must be denied when the court of first instance determines that a “genuine dispute as to [a] material fact” precludes immediate entry of judgment as a matter of law. Fed. Rule Civ. Proc. 56(a). Such rulings, we have observed, are “by their terms interlocutory.” Liberty Mut. Ins. Co. v. Wetzel, 424 U. S. 737, 744 (1976).
Because a plea of qualified immunity can spare an official not only from liability but from trial, we have recognized a limited exception to the categorization of summary-judgment denials as nonappealable orders. Mitchell v. Forsyth, 472 U. S. 511, 525-526 (1985). When summary judgment is denied to a defendant who urges that qualified immunity shelters her from suit, the court’s order “finally and conclusively [disposes of] the defendant’s claim of right not to stand trial.” Id., at 527 (emphasis deleted). Therefore, Mitchell held, an immediate appeal may be pursued. Ibid.
We clarified in Johnson v. Jones, 515 U. S. 304 (1995), that immediate appeal from the denial of summary judgment on a qualified immunity plea is available when the appeal presents a “purely legal issue,” illustratively, the determination of “what law was ‘clearly established’ ” at the time the defendant acted. Id., at 313. However, instant appeal is not available, Johnson held, when the district court determines that factual issues genuinely in dispute preclude summary adjudication. Ibid.
Jordan and Bright sought no immediate appeal from the denial of their motion for summary judgment. In light of Johnson, that abstinence is unsurprising. Moreover, even *189 had instant appellate review been open to them, the time to seek that review expired well in advance of trial. See Fed. Rule App. Proc. 4(a)(1)(A) (notice of appeal must generally be filed “within 30 days after the judgment or order appealed from”). Nor did they avail themselves of Federal Rule of Civil Procedure 50(b), which permits the entry, postverdict, of judgment for the verdict loser if the court finds that the evidence was legally insufficient to sustain the verdict. See Rule 50(a), (b). Absent such a motion, we have repeatedly held, an appellate court is “powerless” to review the sufficiency of the evidence after trial. Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 546 U. S. 394, 405 (2006); see Cone, 330 U. S., at 218.[6]
*190 “[Questions going to the sufficiency of the evidence are not preserved for appellate review by a summary judgment motion alone,” Jordan and Bright acknowledge; rather, challenges of that order “must be renewed post-trial under Rule 50.” Brief for Respondents 11 (emphasis deleted). Jordan and Bright insist, however, in defense of the Sixth Circuit’s judgment, that sufficiency of the evidence is not what is at stake in this case. A qualified immunity plea raising an issue of a “purely legal nature,” they urge, ibid., is preserved for appeal by an unsuccessful motion for summary judgment, and need not be brought up again under Rule 50(b), id., at 11-12 (citing as pathmarking Rekhi v. Wildwood Industries, Inc., 61 F. 3d 1313, 1318 (CA7 1995)). Unlike an “evidence sufficiency” claim that necessarily “hinge[s] on the facts adduced at trial,” they maintain, a purely legal issue can be resolved “with reference only to undisputed facts.” Brief for Respondents 16 (quoting Mitchell, 472 U. S., at 530, n. 10).
We need not address this argument, for the officials’ claims of qualified immunity hardly present “purely legal” issues capable of resolution “with reference only to undisputed facts.” Cases fitting that bill typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law. See Behrens v. Pelletier, 516 U. S. 299, 313 (1996); Johnson, 515 U. S., at 317.
Here, however, the pre-existing law was not in controversy. See Farmer v. Brennan, 511 U. S. 825, 834, 847 (1994) (prison official may be held liable for “deliberate indifference” to a prisoner’s Eighth Amendment right to protection against violence while in custody if the official “knows that [the] inmat[e] facets] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it” (internal quotation marks omitted)); Crawford-El v. Britton, 523 U.S. 574, 592 (1998) (First *191 Amendment shields prisoners from “retaliation for protected speech”).[7] What was controverted, instead, were the facts that could render Jordan and Bright answerable for crossing a constitutional line. Disputed facts relevant to resolving the officials’ immunity pleas included: Was Jordan adequately informed, after the first assault, of the identity of the assailant, see App. 4, and of Ortiz’s fear of a further assault? What, if anything, could Jordan have done to distance Ortiz from the assailant, thereby insulating her against a second assault? See id., at 4-5.[8] Did Bright place and retain Ortiz in solitary confinement as a retaliatory measure or as a control needed to safeguard the integrity of the investigation?[9]
In sum, the qualified immunity defenses asserted by Jordan and Bright do not present “neat abstract issues of law.” See Johnson, 515 U. S., at 317 (quoting 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.10, p. 644 (1992)). To the extent that the officials urge Ortiz has not proved her case, they were, by their own account, obliged to raise that sufficiency-of-the-evidenee issue *192 by postverdict motion for judgment as a matter of law under Rule 50(b). See Brief for Respondents 11. They did not do so. The Court of Appeals, therefore, had no warrant to upset the jury’s decision on the officials’ liability.
* * *
For the reasons stated, the judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Compare, e. g., Black v. J. I. Case Co., 22 F. 3d 568, 570-571 (CA5 1994) (declining to review denial of summary judgment after trial); Price v. Kramer, 200 F. 3d 1237, 1243-1244 (CA9 2000) (no exception where summary judgment rejected assertion of qualified immunity), with Goff v. Bise, 173 F. 3d 1068, 1072 (CA8 1999) (denial of summary judgment based on qualified immunity reviewable after trial on the merits); 316 Fed. Appx. 449, 453 (CA6 2009) (case below) (same).

 Ortiz maintained in her criminal prosecution that she acted in retaliation for multiple incidents of domestic violence to which she had been subjected over a span of several years. 316 Fed. Appx., at 450.

 The accounts of the episodes-in-suit described here recite facts the jury reasonably could have found from the testimony presented at trial.

 As to Jordan, the District Court determined, inter alia, that “a jury could reasonably find . . . that Ortiz did inform Jordan of Sehultz’s identity,” and that “Ortiz made Jordan aware that [Ortiz] reasonably feared a further sexual attack.” 211 F. Supp. 2d, at 925. Concerning Bright, the court noted that “[a] jury could reasonably find that Brightf’s] . . . purported reason for placing Ortiz in security control was pretextual.” Id., at 928.

 Judge Daughtrey dissented; in her view, the strength of the evidence against Jordan and Bright amply supported the jury’s verdiet. 316 Fed. Appx., at 456-457. Quoting Kiphart v. Saturn Corp., 251 F. 3d 573, 581 (CA6 2001), she observed that appellate courts “do not weigh the evidence, evaluate the credibility of witnesses or substitute our own judgment for that of the jury.” 316 Fed. Appx., at 457.

 Jordan and Bright contend that their failure to file a Rule 50(b) motion cannot be the basis for overturning the judgment of the Court of Appeals. Because Ortiz presented no argument about the absence of a Rule 50(b) motion in her brief to the Sixth Circuit or in her petition for certiorari, Jordan and Bright argue, she has forfeited the objection. Jordan and Bright are not well positioned to make this argument. They did not suggest that Ortiz had forfeited her Rule 50(b) objection, or argue that such an objection is forfeitable, until their merits brief to this Court. Ordinarily we do not consider “a nonjurisdictional argument not raised in a respondent’s brief in opposition to a petition.” Baldwin v. Reese, 541 U. S. 27, 34 (2004) (internal quotation marks omitted).
In any ease, we do not see how Ortiz can be held to have forfeited her Rule 50(b) objection. The arguments Jordan and Bright made in the Court of Appeals invited no such objection. Jordan and Bright urged on appeal that the jury’s verdict was “against the weight of the evidence.” Final Brief for Defendants-Appellants in No. 06-3627 (CA6), pp. 21-43. A plea that a verdict is “against the weight of the evidence,” of course, is not equivalent to a plea that the evidence submitted at trial was insufficient to warrant submission of the case to the jury. 11 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure §2806, pp. 65-67 (2d ed. 1995 and Supp. 2010). A determination that a verdict is against the weight of the evidence may gain a new trial for the verdict loser, but never a final judgment in that party’s favor. Montgomery Ward & Co. v. Duncan, 311 U. S. 243, 250-251 (1940). Ortiz objected, accordingly, that Jordan and Bright had not asked the District Court for a new trial and were therefore “bar[red] [from] appeal on this ground.” Final Brief for *190 Plaintiff-Appellee in No. 06-3627 (CA6), p. 23. Ortiz thus responded altogether appropriately to the arguments Jordan and Bright made.

 The Court of Appeals held that Ortiz’s complaint had not properly tied her claim against Bright to the First Amendment. 316 Fed. Appx., at 455. “When an issue not raised by the pleadings is tried by the parties’ express or implied consent,” however, “it must be treated in all respects as if raised in the pleadings.” Fed. Rule Civ. Proc. 15(b)(2). Bright, like the District Court, recognized the First Amendment interests at stake in Ortiz’s claim against her. See App. 11 (District Court, in ruling on Rule 50(a) motion, inquired into Bright’s authority to “regulat[e] speech of inmates”); id,., at 20 (Bright’s counsel argued that Ortiz’s segregation “would not have had a chilling effect” on her speech).

 Relevant to that matter, Bright testified at trial that, had Jordan “reported the first incident immediately, ‘the proper people would have taken a role in protecting Mrs. Ortiz.’” 316 Fed. Appx., at 457 (Daughtrey, J., dissenting).

 Apart from Bright’s testimony, the defense produced no evidence that Ortiz “continually” talked about the assaults or in any other way interfered with the investigation. See Tr. 271, 397 (Bright’s testimony acknowledging absence of any documentation regarding Ortiz’s conduct during investigation).