Cheryl McCARTY, et al.,
Plaintiffs–Appellees,

v.

CITY of SOUTHFIELD, et al.,
Defendants–Appellants.

No. 15–1492.

United States Court of Appeals,
Sixth Circuit.

Feb. 25, 2016.

Before: BATCHELDER and GRIFFIN, Circuit Judges; and CARR, District Judge.*

ALICE M. BATCHELDER, Circuit Judge.

In this interlocutory appeal from a denial of a motion for summary judgment, a defendant police officer, Keith Birberick,

---

* The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

argues that the plaintiff's evidence did not create a genuine dispute of material fact so as to overcome his assertion of qualified immunity. We establish our appellate jurisdiction and AFFIRM.

## I.

According to Cheryl McCarty, she was driving her three young grandchildren to school when Officer Birberick pulled her over and accused her of illegally passing a stopped school bus. She argued with him, claimed there had been no school bus, accused him of racism, and refused to accept the ticket, letting it instead drop on the ground. Officer Birberick returned to his patrol car—a large SUV—and drove away. But McCarty, who had turned off her ignition but not her headlights, had accidentally drained her car battery and could not restart her car.

Stranded on the side of a very busy city street, she turned on her emergency lights and attempted, unsuccessfully, to phone a friend for assistance. Approximately 20 minutes later, Officer Birberick returned, as part of his routine patrol, and pulled up behind her. When he approached McCarty's driver-side window, she rolled her eyes in disgust and looked away. They did not speak. Officer Birberick returned to his SUV, which he then rammed into McCarty's sedan from behind, purportedly to move her car off the busy street into the adjacent gas station lot. He did not forewarn McCarty of his intention to ram her car and the collision took her and the children by surprise, throwing them from their seats.

Rather than moving the car to the gas station, however, this collision actually forced the car further into traffic. McCarty and the children were wailing in panic. Officer Birberick got out of his car and began screaming at McCarty that she could have been killed, though he did not specify what she had done wrong or should have done differently. He then waited for traffic to clear and rammed her car again, this time so hard that he knocked the rear end of the car up off the ground, causing it to lurch into the gas station, just missing the gas pumps. At this point, McCarty was dazed, the children were on the floor with one bleeding from the head, and the car was severely damaged. Officer Birberick drove off without any further interaction.

A service station attendant jump started the car and McCarty drove the damaged car and children away. She filed a police complaint and, eventually, this lawsuit. Officer Birberick moved for summary judgment on qualified immunity which the district court denied upon concluding that, taking these facts in the light most favorable to McCarty, a jury question remained as to whether Officer Birberick's ramming of her car, without warning and with three young children in it, was so outrageous as to shock the conscience and violate McCarty's clearly established, substantive due process rights. Officer Birberick appeals.

## II.

This is an interlocutory appeal from a denial of a motion for summary judgment, in which the defendant argues that the plaintiff's evidence did not actually create a genuine dispute of material fact so as to overcome his assertion of qualified immunity. Thus we must establish the bounds of our appellate jurisdiction and then decide the appeal within those bounds.

To overcome a qualified immunity defense at the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. This means, at a minimum, pointing to "evidence on which [a] jury could reasonably find for

the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, it must deny summary judgment.

The denial of summary judgment is ordinarily not a final decision within the meaning of 28 U.S.C. § 1291 and is not immediately appealable. But the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of [ ] § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We may decide an appeal challenging the district court's *legal* determination that the defendant's actions violated a constitutional right or that the right was clearly established. *Id.* We may also decide an appeal challenging a *legal* aspect of the district court's factual determinations, such as whether the district court properly assessed the incontrovertible record evidence. *See Plumhoff v. Rickard,* 572 U.S. ——, 134 S.Ct. 2012, 2019, 188 L.Ed.2d 1056 (2014); *Roberson v. Torres,* 770 F.3d 398, 402 (6th Cir.2014).

We may not, however, decide an appeal challenging the district court's determination of " 'evidence sufficiency,' *i.e.,* which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Such a challenge is purely fact-based, lacking any issue of law, and is therefore not an appealable "final decision" within the meaning of 28 U.S.C. § 1291. These types of prohibited fact-based ("evidence sufficiency") appeals challenge only the plaintiff's allegations (and the district court's acceptance) of "what [actually] occurred[ ] or why an action was taken or

omitted," *Ortiz v. Jordan,* 562 U.S. 180, 190, 131 S.Ct. 884, 178 L.Ed.2d 703 (2011), who did it, *Johnson,* 515 U.S. at 307, 115 S.Ct. 2151 or "nothing more than whether the evidence could support a [jury's] finding that particular conduct occurred," *Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). The defendant-appellant may not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal. *See Romo v. Largen,* 723 F.3d 670, 673–74 (6th Cir.2013).

When necessary, we "separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine')." *Roberson,* 770 F.3d at 402. Similarly, we separate an appellant's reviewable challenges from its unreviewable. *DiLuzio v. Village of Yorkville,* 796 F.3d 604, 610 (6th Cir.2015). That is, we can "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310 (6th Cir.2005).

█ For purposes of this appeal, Officer Birberick accepts McCarty's version of the facts (i.e., evidence and inferences therefrom) but claims that those facts do not prove a clearly established constitutional violation. Thus we proceed from those facts, which are that Officer Birberick:

(1) knew that McCarty's car was disabled on a heavily trafficked city street, given that it was still parked where he had left it earlier but now with its emergency lights flashing;

(2) knew that she had already been there for at least 20 minutes, indicating that assistance could already be on the way or even nearby;

(3) knew that McCarty was likely unreceptive to his assistance, given that she had earlier accused him of lying and racism, refused to accept the ticket, and rolled her eyes at him upon his return;

(4) chose not to call for assistance, either from a tow truck or another officer, perhaps one who had not just had an uncomfortable interaction with McCarty;

(5) knew that three small children were passengers in the car, given that he had approached the car on foot at least three times—once before the ticket, again after writing the ticket, and again upon his return to the scene;

(6) knew that he had not spoken with McCarty upon his return, to investigate the situation or warn McCarty of his intent to ram her car with his SUV;

(7) knew that McCarty likely either had the brake engaged or the transmission in "park" when he rammed it, since it was stopped there, and that neither McCarty nor the children were expecting the violent rear end collision;

(8) chose not to instruct McCarty to (a) put the car in neutral, (b) steer the car toward the gas station, (c) prepare herself for the contact, or (d) remove the children from the car before he rammed it;

(9) knew that his police SUV was substantially larger than McCarty's sedan and did not gently "push" the car with his SUV but instead struck and rammed McCarty's sedan hard enough to jolt it forward and knock it into the street, and then berated her for the resulting circumstances and danger;

(10) knew that his first ramming of the car damaged it and jarred the occupants;

(11) rammed the car a second time, again without warning, instruction, or removal of the children—this time hard enough to knock the back of the car up off the ground and send it careening into the gas station toward the gas pumps, leaving McCarty dazed and knocking the children from their seats onto the floor and the girl in the front seat into the dashboard, cutting her head;

(12) immediately left the scene without speaking with McCarty, checking on her or her car, or calling for medical or automotive assistance; and

(13) later destroyed the dash cam recording from his police car.

Officer Birberick contends that while this conduct falls below the expected standard of care for a reasonable officer, it is not so outrageous as to "shock the conscience," which is the applicable standard here. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing *Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). We disagree with his assessment.

Under McCarty's proffered version of the facts, Officer Birberick's actions shock the conscience. In short, without consent or even warning, he violently rammed McCarty's car with his much larger SUV, needlessly damaging her car and propelling it into traffic, endangering the safety of the occupants, which included three small children. He then fled the scene of the accident he had just caused and destroyed evidence that might have proven his motivation or malicious intent. This is not what one would expect from a reason-

able police officer in these circumstances. In fact, this would be shocking—and criminal—behavior if committed by an ordinary citizen. We must agree with the district court that McCarty has produced evidence that, if believed, could support a reasonable jury in finding that this behavior shocks the conscience. Consequently, the district court was correct to deny qualified immunity here.

■ On appeal, Officer Birberick also presses his claim of governmental immunity on the state law claims, which the district court denied summarily without explanation. Officer Birberick argues that Michigan grants him governmental immunity from tort liability except in cases of "gross negligence," Mich. Comp. Laws § 691.1407(2)(c); that McCarty has accused him of intentional torts, not "gross negligence"; therefore, he is entitled to governmental immunity under Michigan law. We find his second premise faulty. McCarty has actually accused him of multiple tortious acts, several of which are easily categorized as "gross negligence."

As for the intentional torts, Officer Birberick cites *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217, 228–29 (2008), which requires Officer Birberick to prove that he was acting in the course of his employment, at least reasonably believed that he was acting within the scope of his authority, his actions were discretionary in nature, and he acted in good faith. As this is Officer Birberick's motion, we—like the district court—construe the facts and evidence in the light most favorable to McCarty. In this light, particularly given Officer Birberick's inexplicable departure from the scene of the accident and his destruction of his dash cam recording, significant questions remain as to whether Officer Birberick acted within his authority and in good faith.

The district court was correct to deny Michigan governmental immunity on these facts.

### III.

We AFFIRM the judgment of the district court.